Now we may begin. Thank you, Your Honor. May it please the court, my name is Peter Opsor. I represent the appellant in this case, Prager University. Also with me at counsel table are two of my colleagues who've been tremendous assistance to me in this case, the Honorable former Governor Pete Wilson, great state of California, and my friend Ryan Keech. Your Honors, this is a really, at least to me is on a record before you that I would submit is unique with respect in particular to the public function test. And let me stop for one second. I omitted to do this. I'd like to reserve five minutes of my time if possible for rebuttal. All right, try to watch the clock. I'll try to help you as well. Thank you so much. In the event, there are two issues here. We're here on a motion to for a constitutional violation under the Federal First Amendment on the theory that there was no state action because YouTube is privately owned. And the ownership of a video hosting platform, according to the Honorable Lucy Koh, is not a function that is an exclusive traditional government function under the public function test. With respect to that issue, we don't think that that is the function that we are alleging in the complaint is the issue. We think that private parties absolutely have the right to own and operate video platforms and that they would not be state actors. What makes this case different is the affirmative designations of the platform as a public forum for freedom of expression, for freedom of information. Public designation by an affirmative designation by whom? By YouTube. And what difference does that make? Why did they just declare themselves to be public? Well, they make themselves public by declaring themselves public? Yes, Your Honor, and let me explain. In Marsh v. Alabama, the United States Supreme Court said that the more that the property owner opens up his or her property for public use and public function, the more that that property becomes subscribed to constitutional scrutiny. That case was cut back in Halleck and Hudgins because merely operating a forum that is, that offers people that opportunity, is not the same thing as officially designating private property as a public forum. Now what Your Honor is getting at is that there is a bright line rule that a public forum for freedom of expression, then I have no response to that, if that is the bright line rule. But I did not see Judge Kavanaugh, Justice Kavanaugh, and I did not see the courts in... Go ahead. Counselor, your argument is almost an argument that if YouTube had come forward and said, we've agreed to bind ourselves by the, by the First Amendment, that somehow that would, that would actually have some consequence, that this court would be responsible for enforcing outside of a contract. Yes, and I've heard the argument that it's a contract, that this is a contract case and a UCL case and those are other causes of action. Right, right, right. But, but, but look, this court has said that the regulation of speech by a private party in a public forum is a quintessential government function. In that, in the case I'm referring to is Lee versus Katz. And in that case, I understand that the public forum play issue was not in play. Well, and so that's why Lee isn't very instructive here because everyone agreed it was a public forum. So I don't think you can use Lee to bootstrap that somehow the Google platform becomes a public forum. Do you have a better case than Lee? I actually would ask the court to look at footnote four in Lee because I think Lee tried to deal with that nexus. They said that nexus was not required in footnote four on Lee. I'm only citing Lee for the reason that I lost in the district court, which was that the regulation of speech is not, in a public forum, is not an exclusive government function. I know that what we're dealing with here is, is a different issue, which is assuming that that is the law, that if it's a public forum and you're regulating speech in it, whether you're a private party or a public party, that is an exclusive government function. Your point is... And when you were in the district court, you didn't have the Hallock case, correct? Correct. Correct. And so now, now you've got some fence posts out there that the Supreme Court put up for you. Yeah. And the question is, I mean, if you're hosting speech, Hallock says that's not a traditional exclusive public forum. And even if you went to the dissent, say Justice Sotomayor's dissent, she was basically, that was a case where the state had designated them to be a public access channel. So I think what you're asking, and I want you to frame it, is that you're somewhere between those goal posts. Well, I'm, I'm between Marsh, on the one hand, the company town, right? The privately held company town, and cable access companies, and in Hudgins, a retail company that invites people to come and shop. We need to look at the nature of the invitation, the character of how the platform is operated, and specifically the fact that as a result of these representations, they control 90 to 95 percent of the public video content and engagement in the world. They are not just a company town. They're arguably a company country, and maybe a company world force. And my point is that they did that on the express designation, which they have repeated to Congress under oath, that they are a public forum. So to Judge Baby's point, if that's all they do, I guess they get to advertise themselves, and I guess they get to run around there and consistently say, we're a public forum, we're a public forum, we're a public forum, but they don't have to abide by the fundamental principles that are at the heart of what it is to be a public forum. But it seems to me that you can puff and say that you're a public forum, but that doesn't define your First Amendment status. I mean, they are a public forum in a colloquial sense. People can go, they host speech by a whole variety of individuals, organizations, companies, and so in that way, they become a public forum for discussion. But does that necessarily mean that they're a First Amendment public forum? And that's, I think, why the, what you're trying to say is, well, by representing the words public forum, that they're transformed. I think it's more than just the words public forum, okay? First of all, they agree to be viewpoint neutral as to all content-based regulations, and that those rules apply equally to all. And listen to what they say in their mission statement. So sue them for contract. Oh, well, if I didn't have, yeah, and when they come back. I'm serious, I'm not recommending that we have more lawsuits. I'm just saying that, that sounds like a contract claim, not a constitutional claim. And we have sued them for contract, and then we're going to have a CDA fight, and then I'm going to be back in front of this court as to whether the application of the CDA to immunize them on an issue of speech is a prior restraining speech. So we're going to, I mean, we're not there yet, but that's where we're headed. Because it's a hall of mirrors here. On the one hand, they're out there saying, I mean, can I just, I just have to read this. Freedom of expression. We believe people should be able to speak freely, share opinions, foster open dialogue, creative freedom leads to new voices, formats, and possibilities. Freedom of information. We believe everyone, everyone should have easy, open access to information. Freedom of opportunity. We believe everyone should have a chance to be discovered, build business, succeed on their own. Freedom to belong. We believe everyone should be able to find community support, break down barriers. These are subject only to content neutral rules with no viewpoint bias whatsoever. Narrow rules. I mean, that sounds a lot like they're taking the exact language of 20 to 50 years of First Amendment jurisprudence and putting it out to the public. And I understand the list, the list of videos that you, that you put in your complaint is, is impressive. And I, I haven't, I haven't viewed any of those videos or the, or the ones that you contrasted them with. If your representations are correct, it seems, it seems deeply disturbing that they've, that they've put your stuff in the, in the restricted, in the restricted area. But that seems to suggest that, that Google isn't abiding by its word. That Google, I'm, the Google, I'm sorry, the YouTube is, is not doing what they've promised. That they've somehow failed to live up to their promise. I'm not sure that creates a First Amendment issue. Your Honor, I would agree with you in, in, in almost 99 percent of the cases. What I'm saying is, I'm on a motion to dismiss. And this is a mixed question of law and fact. And I have alleged that these representations and hundreds of other facts make them a public forum. Now, if we're going to draw the bright line, and as Justice White said in Hudgins, and he said it beautifully, nobody has accorded Marsh the proper burial that it appears to be deserving. And if that's what we're talking about here, if this Court is prepared to be the first one to draw the line and say, under no circumstances, can a property owner, on its own, as a free, willing, knowing property owner, designate its property as a public forum, well, then I lose. Easy enough to limit, to limit Marsh to its facts. That is, it's, it's, it's a company, it's a company town. Company town. And unless, what you're asking us to do is to extend Marsh and declare this to be an Internet company town. Yes. And I'm also saying that if you look at It's a pretty big step. Well, no, but let's, can we just look at Halleck for a second? Because I think Judge Kavanaugh left the door open. Because I have to tell you, I really thought about whether I should withdraw the First Amendment claim. I, I, I did, after Halleck. And then when I went back and read it, why didn't they just simply, you know, overrule the notion that a private property owner cannot ever use its property? I mean, you can say Because they didn't need to. And when they don't need to, you know, to, to strike a balance, the Supreme Court doesn't necessarily go back and retroactively kind of parse through all its cases. We've seen that time and again. So, so if they're a company town, and if I were to allege that they're a company town, they're providing political services, maybe law enforcement's using them, things of that nature. Well, you have an analogy to a company town. You don't have a company town. Well, and, and one would argue that, that, that a company town isn't of itself an analogy. So, so what language do you think it is? Yes, yes. Tell us what page. Yes. Okay. So, in, on page 7 and 8 of the slip, slip opinion. Okay. Can you give me a, can you give me a Supreme Court citation? I don't believe we got, we checked, right, to see if it had come out. Oh, I've got it. Oh, I apologize. It's, it's section 2B. Well, you have a Okay. All right. 2B, that's helpful. I, I apologize, Your Honor. Got it. I'm sorry that we're Which paragraph? Okay. It's the paragraph, it's the paragraph that, that, that begins like this. It says, quote, by contrast, and, and, and this is the argument that, in fact, the, the first, the first argument and the third argument in, in, in, in, I just want to make this point, were really more of entanglement arguments. This is where Judge Kavanaugh gets to the concept that it, it's a public forum by opening the forum up to the speech. Because everybody agrees that if it's a public forum, if you were to find that I've alleged enough for a public forum, then we're okay. But I, I get, I take your point, which is can they, can they designate it? And he says, by contrast, when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment, and, and may, may exercise that article. Then he goes on to say, okay, that, that the Hudgens decision reflects a common, and he's relying on Hudgens. The Hudgens decision reflects a common sense principle providing some kind of forum, some kind of forum for speech is not an activity that only governmental entities have traditionally performed. I agree with that. But that's not what I'm alleging here. They're not just alleging some kind of forum. And look what he relies on. They rely on Hudgens. The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use. What I'm arguing, Your Honors, and maybe I'm not going to get there, but what I'm arguing is this is not attenuated. This is an express admission that they have doubled down on and tripled down on that they are, they are, as a private property owner, they are choosing to use their property. And the slippery slope. Okay, so let me go back and ask you. He says here in the opinion merely hosting speech by others is not a traditional exclusive public function and does not alone transform private entities into state actors subject to the First Amendment. So I guess you would say hosting speech doesn't, you'd have to agree with that because we can't, we can't disagree with the Supreme Court. I absolutely agree with that, Your Honor. Thank you. Yeah. But you would then say, but if they represent themselves as a public forum, then that's the extra for transformation. Well, I'm saying there are a number of factors. And again, I come from the state of California where we have a different view of state action. And I understand that that's not governing on this court, but we do have a test that works in California. We look at factors. We look at the size of the speech that's controlled. We look at the nature of the invitation. But we're not here looking at federal law. Well, I think that there's no, there's no preclusion of that. We have mixed questions of fact and law. This is a mixed question. Your argument, your argument is interesting because it depends on being able to say something that everybody, that everybody seems to agree, which is that YouTube dominates the area. And if you don't have access to, full access to YouTube, then you don't have full access to a worldwide forum in which competing speech does have, does have access to that. Correct. Of course, you know, Justice Holmes' response might be, well, let's, why don't you just open up your own, your own channel? Right. Let's have a Prager University channel and you can put anything you darn well desire and everybody will find it. Absolutely, Your Honor. That would be competing speech. But you want us, you want us to say YouTube has been so successful that we're going to impute to it the role of the government. No. What I, well, that's a factor. But, but I want to say, how else, let me ask you this. If this were a government website and I. That would be a. That would be a very. But why? Because of title, right? Solely because of title. No, not because of title, but because it would then be state action. Well, but it's state action because of title. Or if the government. Because of reality. If, if this were, if this were a licensed right, that is, if there were limited, if there were limited band scope and the, and the, and the FCC were deciding who gets, who gets band scope or not. And they gave YouTube, you know, all of this broadband and just let them dominate everything. It became, becomes the only thing. Might be a very different case. Yeah. That's closer to the government and government licensed. Right. But again, I think you're drawing a line that says you, how else can you have, how else can a property owner or even the government have a public forum without designating it? You can't do it. Even the government has non-public forms. I can't go on the Contra Costa County website and start claiming it's a place for free speech. I look up who the district attorneys are, who I have a case with. You have to affirmatively designate your property. The only difference here is it's a private property owner. And all I'm saying is don't draw that bright line. Give me an opportunity to go back and let's do the mixed questions of fact and the factors on this, because even Judge Kavanaugh, had he presented with these facts, I don't know he would have come out this way. If I had handed him these representations, that's the problem. He's worried about property owners everywhere being held to be a public forum. There's a simple solution here. My opposing counsel, who, by the way, is a wonderful person I have a great relationship with and I love YouTube and I want to be clear about that. We are not out as an existential threat here at YouTube. He could come up here right now and say, you know what, Your Honor, we're de-designating. Problem goes away. He controls this. This is not the concern that Justice Kavanaugh had about a state law forcing a private party to make a cable access station. I mean, I grew up in New York City. I can tell you that you can't get 2.3 billion people on cable access. You get Salvador Dali at 3.30 in the morning. Trust me. I've seen those. I'm going to leave now Salvador Dali where he is and take a break from your rebuttal. Thank you so much. I really appreciate the opportunity. Good morning. Good morning, Your Honor. May it please the court. Brian Willen for Google and YouTube. So appellant's claims in this case are based on an entirely artificial premise. YouTube is not discriminating against PragerU and hasn't taken any action based on PragerU's political views. But I mean, if that's your opening, if that's your opening line, you're inviting us. Yeah, you're inviting us to make that judgment. And they've issued a nice chart that at least very superficially, again, I haven't looked at the videos, suggests that YouTube has really over-designated some things here and that it ought to undesignate them and put them back on. So of course we disagree with it. The reason for starting it is just to make clear that the premise of their claims is artificial. But the issues before the court are strictly legal. So let me get into it. And at the risk of belaboring a point that I think Your Honor has articulated very well, let me start with Halleck, which I think conclusively resolves any doubt about appellant's claims in this case. Now, the First Amendment state action issue was not a difficult issue before Halleck was decided. But Halleck specifically and expressly rejects the fundamental premises on which their claim rests. So first, Halleck makes clear that the public function test, which is the only test for state action that Prager relies on, applies only to a very, very few functions that were traditionally and exclusively performed by the government. And Halleck then goes on to say that providing a forum for speech, hosting speech by others, is not one of those traditional and exclusive public functions. So this holding applies directly here. So first of all, with respect to YouTube, the function that YouTube is providing is a platform for speech. It's a video hosting platform. And it's quite clear, there's no dispute, that that is not a function traditionally and exclusively performed by the government. So Halleck's statement that it is not at all a near-exclusive function of the state to provide the forums for public expression, politics, information, or entertainment applies directly to this case. That's especially true when it comes to online services. There is absolutely no tradition in this country of the government providing online services, certainly not exclusively. And you can only look back to this court's own decision in Howard v. AOL, which squarely rejected the theory that another large internet platform, America Online, this is back in 2000, was a state actor, on the theory which was alleged in the complaint there, that it was a quasi-public utility. So the same thing here. So Appellant has tried— Do you think that almost 20 years of development of the internet may have changed that? Well, it hasn't changed at all the rule of state action, which is the rule that we're focused on here. So what the Supreme Court has made clear over and over again, particularly in the Brentwood case, is that a nexus between private action and the actions of the government is always required for a finding of state action. That nexus is completely absent in this case. And that brings me to the second and crucial point about Halleck, in particular in the passages that my friend on the other side was discussing. So the same argument that they've advanced here, that the service provider is regulating speech in a public forum, this is the argument that they make relying on this court's decision in Lee v. Katz. Well, Halleck expressly rejected that attempt to reframe the question and focus on this term public forum. So what Halleck said is that the key point in thinking about a public forum under the First Amendment is who is providing it. If the government is providing the forum, it's a public forum. If a private entity is providing the forum, in almost all cases, it's not. The exceptions are situations where the private entity may own the property, but the government has some role that it's playing, whether as a landlord or as a controller of what's happening on the space. There's simply no cases anywhere that they can cite to where pure private action, unconnected to the government and unconnected to a traditional and exclusive government function, rises to the level of state action. The difficulty, and I see a lot of sympathy for their argument, is that with the ubiquity of YouTube and the dominance in terms of a video platform and the fact that it's operating with no borders, basically, that Google has almost the equivalent of a state power when it decides who can and cannot be hosted on that platform. So what is their remedy? Well, as my friend pointed out, there are other claims that they have advanced. In this case, there's a series of state law claims, of course, that they made. The district court here declined to exercise supplemental jurisdiction. Well, they do have a federal Section 43 Atlanta MAT claim. I would like to talk about that at some point. The state law claims are proceeding in state court. We think they have no merit for a whole host of reasons. They fail to state a claim. They're barred by Section 230. They're barred by the First Amendment. There's plenty of arguments that we have as to why they haven't and cannot state a claim based on contract or unfair competition or any of the other theories. So is the answer they have no remedy? Well, in this case, they don't, in part because nothing actual untoward has happened to them, in part because the law is very clear. Isn't there a remedy that they just have to go get their own channel? Well, I think that's right. I think that if you look at Justice Kavanaugh's opinion for the court in Halleck, it makes very clear and it goes through great pains to say that the expansion of state action doctrine is a threat potentially to private enterprise and to economic and personal liberty. And so the remedy for this kind of situation is to use the rights that the First Amendment affords private individuals to go and speak for yourself. Now, it's worth pointing out that in this case, not a single one of their videos has actually been removed from YouTube, every one of those videos, even though some of them are not available in restricted mode. You have to go into the back room to look. Well, it's actually the opposite, Your Honor. Well, in the restricted zone. Well, just to be clear about what restricted mode is, it's a limited opt-in feature that only about 1.5 percent of YouTube users are actually using at any given time. So it's vastly the exception. It turns out to be schools and libraries. Schools and libraries for the most part. That's an important audience for them. I'm not saying that it's not an important audience, but I am saying that anyone who wants to see these videos on YouTube can do so simply by going to a browser or going to a computer, which is not logged into restricted mode. So the idea that there's some meaningful censorship that's going on because a small handful of their videos are not available to the small handful of YouTube users using restricted mode I think is just not accurate. But in any event. Let me focus, if I can, on what I think was the fundamental argument that we heard here, which is that YouTube's public statements somehow transform its status. One question on restricted mode. So if I were looking for something, if I'd seen a reference to one of Prager University's videos, can I go to YouTube and look for it? Will YouTube tell me that it's there, but it's behind the wall? So if you have the URL where the video appears, you would go to a page, and this is somewhat relevant I think to the Lanham Act claim, there's a notice that simply says, this video is not available in restricted mode. To see it, you need to turn restricted mode off. But if I went on a general search, for example, they had a series that was on rape on college campuses, and they noted a number of other things that were available, theirs was in restricted mode. If I put in, I was interested in seeing videos on the problem of rape on college campuses, would I get Prager University's listed on the right side when I put in the search terms? Yeah, so if you are logged into restricted mode and do a general search, you will not see videos that have been designated as excluded. So the answer is, if I went to the public library, and they were on restricted mode, then I will never know that Prager University has prepared a video on that. If the library computer was logged into restricted mode. Right. But it's only a question of, in terms of like your privacy, whatever you log in and whatever your restrictions are that you put on your YouTube account. Yes, it is browser specific. Browser specific. And the default is for restricted mode to be off. So someone has to make the affirmative decision to turn it on. And as I say, it's about 1.5% of YouTube users on any given day that are logged in as restricted mode users. But nothing would prevent them from taking those videos and putting them on some other platform. Correct? Oh, of course not. Of course not. And then it would just be a question of search word capability and results as to whether they would show up on rape on college campuses or academic freedom or whatever one wants to look at a video about. Yes, and they might well show up in Google search results which are using a different technology and not connected to what YouTube is restricting or not restricting. So there's any number of ways if they actually want people to see these videos for people to see these videos whether that's hosting them on a different platform whether that's hosting them on their own platform or whether it's just having them be on the general YouTube service What's the appeal process within YouTube if I want to take myself out of a restricted mode and make sure I'm not in that? Sure. So YouTube does have an appeal process which Prager has used for most if not all of the videos that are issued in these cases. Based on that appeal YouTube looked at the videos and some of them were designated differently than they had been based on the AI that was used as the first cut so all of the videos at issue have now been reviewed by humans who have made the determination either that they are eligible or not eligible based on the published guidelines that YouTube has for how it operates restricted mode. So the appeal process exists and Prager's actually used it to its advantage in this case. So if I could talk just about the public statements So the idea that YouTube has designated itself as a public forum is based on both a fundamental misunderstanding of the law and of the facts so just as the court in Halleck made very clear being a platform for speech doesn't subject a private business to the first amendment simply saying you're a platform for speech certainly doesn't create state action and PragerU despite this being the centerpiece of their argument has not cited a single case that suggests otherwise it's not a surprise the first amendment isn't a switch that gets turned on or off based on how a private business describes itself state action is based on substance not on words it requires a nexus to the government and it requires in a case like this engaging, actually engaging in a set of functions that are traditionally and exclusively performed by the government now they've relied on this sort of stray fragment from the Supreme Court's decision in Cornelius v. NAACP about private property being dedicated to public use but and this is I think maybe the most important passage in Halleck in footnote 3 of the court's opinion Halleck expressly repudiated Cornelius' dictum the court made clear that the dictum was quote imprecise and overbroad and quote not consistent with this court's cases so Halleck expressly rejected any suggestion that private property owners are subject to the first amendment constraints whenever they dedicate their private property to public use or otherwise open their property for speech so I think as a matter of law that rules out any sort of dedication argument more broadly the idea that using this dictum in Marsh about opening your property for speech somehow creates a weapon that courts can use to subject private online services to the first amendment I think is inconsistent with 40 years of Supreme Court cases including the line of cases from the 1970s from Central Hardware to Hudgens to Lloyd v. Tanner that have expressly limited Marsh as the court recognized to its unusual facts which have no equivalent here and just one more point about the dedication argument the idea that it would actually be a good result for the first amendment if we or any other online service could turn the first amendment on or off simply by saying we're a public forum or we're not we're committed to free expression or we're not is really a scary and unfortunate result it would create obviously very powerful incentives for online services to renounce any kind of commitment to allowing people to use their platforms for speech and result in a very different and much more clamped down and closed internet which I think is exactly the result that Prager claims not to want so there's a very perverse result to this idea that we should just be in control of whether we're a state actor by what we say so in short the core first amendment argument that Appellant has advanced in this case it's bad law, it's not consistent with the facts, and it's even worse policy. Judge Coe was right to reject it and that ruling should be affirmed. I do want to turn in the five minutes I have left and talk about the Lanham Act claim which we haven't really got a chance to speak about much so the district court was right to reject Appellant's effort to transform YouTube's operation of restricted mode into false advertising the complaint is extremely cryptic about what the Lanham Act claim in this case is supposed to be. There's actually not a single statement that is identified in the complaint as supposedly being false advertising. If you look at paragraph 117 118 of the complaint that's page 940 941 of the excerpts of record you will see no actual statements identified which we don't think satisfies Rule 9b and that would be a basis in and of itself for affirming the dismissal of the claim. Why do you need Rule 9b? I mean isn't it a misrepresentation claim? Not necessarily a fraud claim? There are cases that hold that Rule 9b applies to false statement false advertising cases under the Lanham Act. Whether or not Rule 9b applies they haven't alleged anything here that would plausibly constitute false advertising. Let me just talk briefly about I guess he can speak for himself but I think the I guess they would characterize it as derogatory not necessarily false and that is you've got this big square red face out there and that that is sort of an internet symbol of disapproval and that is Google, YouTube stamp on their films and that association is basically putting the imprimatur of YouTube as to the nature of their films. So why wouldn't that be at least on a motion to dismiss sufficient to be false designation or derogatory in general unfair competition under the Lanham Act? Sure. Let me talk about that. So first of all as I said that statement which is referred to in their briefs in this court is actually not referenced at all in their complaint. It's just not in there. It's certainly not in there in support of their Lanham Act claim. They were actually given leave to amend by the district court and chose not to do it so I think they're stuck with the complaint that they have. But even if that statement were actually before the court. So here's what that statement says. It's a notice that says simply this video is unavailable with restricted mode enabled to view this video you will need to disable restricted mode. That's what it says. So first of all that statement as Judge Koh found is not commercial advertising or promotion under the Lanham Act. It's not commercial speech. It's a purely informational notice. There's no allegation in the complaint that the statement was made for the purpose of influencing consumers to buy defendant's goods or services which is the test that this court articulated in the coastal abstract case. So that's the first problem. The second problem is that the statement just isn't false or misleading. It is 100% true. The videos are not available in restricted mode and if you want to see them you have to turn restricted mode off. So the fact that Prager might disagree with YouTube about the reasons that the videos were excluded doesn't make this sort of purely factual statement untrue. It's a background disagreement that doesn't affect whether the statement is misleading or not. And then the third point is that they have to show proximate cause. They actually have to allege that this statement by itself, not the underlying exclusion of their videos from restricted mode, but the statement itself caused them to suffer a commercial injury that is a harm to reputation or sales. The complaint doesn't do that and I don't think it could because the idea that even if someone interpreted that statement to say that YouTube had found the videos satisfy one or more of the criteria that causes videos not to be available in restricted mode, that would harm their reputation I think is just not plausible. So just to give an example, one of the categories, and in fact the category that is most relevant here is the category of mature subjects which are videos that include specific details about events related to terrorism, war, crime, and political conflicts. The idea that even if YouTube had said, hey Prager, your videos include details about war, your videos include details about political conflicts, that that statement would somehow have harmed their reputation or caused them to lose sales is just not a plausible allegation, even if they had made it, which they didn't. So I think for that reason, Judge Koh got it exactly right, that these kinds of statements do not and cannot give rise to a claim under the Lanham Act. My time is about to expire, so I will stop there. Thank you. You have some time for rebuttal. I'd like to show you what comes up when you go to restricted mode. You've seen that, right, with the red face? And then, what they're doing is they're saying, my client's content contains nudity, it contains obscenity, it contains graphic violence. That's what they're saying about my client's content. You should look at those videos. They don't contain any of that. And they're doing that because they have their own content, and they're promoting their own content on the site. That is a classic Lanham Act claim. They are, by making the representation that they are viewpoint neutral, they are making a statement of fact that my client's content contains obscenity, violence, graphic nudity, et cetera. That's why it's in restricted mode. Where in the complaint is the proximate cause? Paragraphs 41 through 44 allege the statements, and in the Lanham Act portion of the complaint, we allege the proximate cause of the harm. But, Your Honor, if this is a pleading issue, the reason that I didn't amend the complaint had nothing to do with proximate cause. Judge Koh told me, as a matter of law at the case management conference, that the statements were puffery. If she's making the statements are puffery, I can't amend the complaint. That's a ruling of law. If you think that I need to go back and allege that, I will allege it, because you know that 1.5 percent he's talking about, that's 28.5 million people a day. That is classic Lanham. They are using restrictive mode to stigmatize... Do we have any ruling from Judge Koh that says these are puffery? Yes, that's the central... That's in the case management... No, that's in her order. She dismissed it as a matter of law that their statements were pure puffery and are not actionable because they're not statements of fact. I'm saying that when you represent to the public that this is a viewpoint neutral, applying equally to all, you're making a statement of fact that any judge can see when they look at those videos that my client's content contains all this obscenity. That's what Prager is most upset about. It's the stigmatization that YouTube is using and doing it selectively to promote their own content. They're one of the largest content manufacturers and producers in the world now, and they subject certain people's content to their regulations and they don't subject their own. That's unfair competition, but it's also classic Lanham. And at a minimum, I should be given an opportunity to get discovery and go back and prove it. If I lose on summary judgment, so be it. But I didn't even get out of the gate here. I didn't even get the chance to look at the algorithm. I really would love to see what that code is in that algorithm. And I will get that if you give me the opportunity to do so. I also want to address two other quick issues on Lanham. If I may, I've got 20 seconds here. Implications are enough, and that would be the William Morris case, a 9-11 Fed Second 242-245. Need not be made in a formal advertising campaign. That would be 173 Fed Third 725 at 735. So, I mean, obviously on the advertising by implication under the Lanham Act, you need what is identification of the advertising or promotion, and you're saying it's simply that notice. Is that what you're saying? It's the notice that goes with the rules that every consumer sees, that the reason you're in restricted mode is because you contain obscenity, nudity, violence, and all sorts of terms. I mean, read if you read our complaint. I think we have your point in mind. Thank you. Thank you, Your Honors. I really appreciate the time. Thank you so much. I'd like to thank counsel for the argument today. The case of Prager University v. Google LLC is submitted, and we're adjourned for the morning.
judges: McKeown, Bybee, Gaitan Jr.